**Charles Edward HEARNE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51918.**

Court of Criminal Appeals of Texas.

March 31, 1976.

---

1. The fragmentation of grounds of error is as undesirable as a multifarious ground of error.

See also Tex.Cr.App., 534 S.W.2d 707.

Robert M. Jones, Dallas, for appellant.

Henry Wade, Dist. Atty., Maridell Templeton, Les Eubanks and Robert Prather, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. After the jury returned a verdict of guilty, punishment was assessed by the court at twenty-five years.

Appellant and co-defendant Billy Joe Evans, though indicted separately, were tried jointly in one trial.

The indictment alleges the offense occurred on or about August 22, 1971. A conviction resulting from the first trial was reversed by this Court.[1] This appeal stems from the conviction at the second trial in December, 1973.

At the outset, appellant contends that "the trial court erred in admitting appellant's statement over objection that appellant had not voluntarily waived his rights."

The record reflects that the trial court held a hearing out of the presence of the jury. At the conclusion of the hearing, the court entered findings that the confession of appellant was freely and voluntarily made and was admissible. In addition, the court instructed the jury in its charge relative to the law concerning the admissibility of confessions in accordance with Art. 38.22, V.A.C.C.P. Among other attacks made upon the admissibility of the confession, appellant urges that he did not waive his right to remain silent, and that after the officer who took the confession was advised that appellant did not want to talk to him, the officer persisted in questioning him until he obtained a confession.

The testimony of Officer Angell reflects that appellant was brought to the interview room "between 11:30 and 11:45 in the p. m." on August 25, 1971, a time when a magistrate was not available.

After testifying to the warning he gave appellant and stating that appellant "did not indicate that he wanted a lawyer at that time," the record reflects that Angell testified at the hearing outside the presence of the jury as follows:

"Q. Did you then proceed to ask Hearne any questions concerning the murder of Iris Zepther Carter?

1. See *Hearne v. State*, 500 S.W.2d 851.

"A.  Yes, sir, I did.

"Q.  How long did you question him?

"A.  Fifteen to twenty minutes at the most.

"Q.  I'll ask you whether or not at some point in time during this fifteen or twenty minute conversation you had with him, he did admit he took part in the murder of Iris Zepther Carter?

"A.  He did.

"Q.  Did he agree to tell you his part in it?

"A.  Yes, sir."

The officer further testified that the confession was reduced to writing, that the same was read to appellant, including the warnings appearing thereon, and that the witness to the confession, Robert W. Finklea, III, asked appellant if it were "true and voluntary" and appellant said, "Yes."

On cross-examination (at the hearing outside the presence of the jury) the record reflects the following testimony of Officer Angell:

"Q.  Now, when you first began talking to Mr. Hearne, he told you he didn't want to talk to you, didn't he?

"A.  Yes, sir.

"Q.  You did then persuade him to change his mind?

"A.  Yes.

\*     \*     \*     \*     \*     \*

"Q.  You persuaded him bit by bit to change his mind and talk to you?

"A.  Yes, sir."

The record reflects that the officer testified as follows in the presence of the jury:

"Q.  [Appellant's counsel]: He [appellant] said he didn't want to talk to you at first and you had to talk to him thirty minutes or so before he was ready to talk to you?

"A.  Yes, sir.

"Q.  At the top of the voluntary statement it says 'I have the right to remain silent and that I do not have to answer any questions or make any statements at all,' is it your interpretation of that that if the Defendant does not want to talk to you, that you can continue until you can persuade him to talk to you?

"A.  Yes, sir.

"Q.  You did persuade him to talk to you, didn't you despite the fact that he didn't want to?

"A.  Yes.

\*     \*     \*     \*     \*     \*

"Q.  And after he was duly warned, he didn't want to talk to you, you had to talk to him thirty minutes after that?

"A.  Yes, sir."

Appellant did not testify at the *Jackson v. Denno*[2] hearing or at the trial on its merits.

The Supreme Court of the United States has recently addressed the issue here presented in *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

The Supreme Court noted that resolution of the question "turns almost entirely on the interpretation of a single passage" in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which reads:

"Once warnings have been given, the subsequent procedure is clear.  If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.  At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.  Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome

---

2.  See *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

free choice in producing a statement after the privilege has been once invoked." 384 U.S., at 473–474, 86 S.Ct., at 1627.

In construing the foregoing passage from *Miranda,* the United States Supreme Court in *Michigan v. Mosley,* supra, said:

"This passage states that 'the interrogation must cease' when the person in custody indicates that 'he wishes to remain silent.' It does not state under what circumstances, if any, a resumption of questioning is permissible. The passage could be literally read to mean that a person who has invoked his 'right to silence' can never again be subjected to custodial interrogation by any police officer at any time or place on any subject. Another possible construction of the passage would characterize 'any statement taken after the person invokes his privilege' as 'the product of compulsion' and would therefore mandate its exclusion from evidence, even if it were volunteered by the person in custody without any further interrogation whatever. Or the passage could be interpreted to require only the immediate cessation of questioning, and to permit a resumption of interrogation after a momentary respite.

"It is evident that any of these possible literal interpretations would lead to absurd and unintended results. To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned. At the other extreme, a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests. Clearly, therefore, neither this passage nor any other passage in the *Miranda* opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

"A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . .' 384 U.S., at 479, 86 S.Ct., at 1630. The critical safeguard identified in the passage at issue is a person's 'right to cut off questioning.' Id., at 474, 86 S.Ct., at 1627. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. *We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.'* " (Emphasis supplied.)

While the Supreme Court left unanswered the issue of when and under what circumstances questioning of the accused may resume,[3] it left no room for doubt that

---

3. In *Michigan v. Mosley,* supra, the Supreme Court found that the accused's right to cut off questioning was "scrupulously honored." We quote from the syllabus of the opinion:

"Respondent, who had been arrested in connection with certain robberies and advised, in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, that he was not obliged to answer any questions and that he could remain silent if he wished, and having made oral and written acknowledgement of the *Miranda* warnings, declined to dis- .

the admissibility of a statement taken from a person in custody depends on whether his "'right to cut off questioning' was 'scrupulously honored.'"

In the case before us, the State urges that the record does not reflect that appellant "did not actually wish to invoke his right of silence" nor "that appellant refused to talk." *Miranda* requires:

"If the individual indicates *in any manner*, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (Emphasis supplied.)

The testimony of the only witness on this issue, Officer Angell, the person to whom the statement was given, reflects that the officer continued to question appellant after appellant had stated "that he didn't want to talk" until he "persuaded him to change his mind." The clear and inescapable conclusion from the officer's testimony is that interrogation continued after appellant had made it known that he wished to remain silent. We are not here confronted with the question of at what point in time and under what circumstance questioning may resume after the right to remain silent has been invoked since the testimony of the officer reflects that there was never any cessation of the interrogation.

 The State also points to the testimony of Angell that after he told appellant that co-defendant Evans had confessed appellant expressed a desire to "get his part in too" and to give a "statement to the

facts." The foregoing statements attributed to appellant do not render the confession voluntary and admissible after appellant's request to remain silent had not been honored.

 We find that the United States Supreme Court's decision in *Michigan v. Mosley,* supra, construing *Miranda v. Arizona,* supra, dictates that the confession of appellant was rendered inadmissible when interrogation persisted and resulted in a confession after appellant's request to remain silent had not been honored.[4]

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

cuss the robberies, whereupon the detective ceased the interrogation. More than two hours later, after giving *Miranda* warnings, another detective questioned respondent solely about an unrelated murder. Respondent made an inculpatory statement, which was later used in his trial for murder which resulted in his conviction. The appellate court reversed on the ground that *Miranda* mandated a cessation of all interrogation after respondent had declined to answer the first detective's questions. Held: The admission in evidence of respondent's incriminating statement did not violate *Miranda* principles. Respondent's right to cut off ques-

tioning was scrupulously honored, the police having immediately ceased the robbery interrogation after respondent's refusal to answer and having commenced questioning about the murder only after a significant time lapse and after a fresh set of warnings had been given respondent. *Westover v. United States,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, distinguished. Pp. 324–328."

4. Our holding herein does not affect the validity of our decisions in cases such as *Reed v. State,* Tex.Cr.App., 518 S.W.2d 817; *Harris v. State,* Tex.Cr.App., 516 S.W.2d 931; *Sweiberg v. State,* Tex.Cr.App., 511 S.W.2d 50.