**Felix Garcia OCHOA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 55669.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 8, 1978.

State's Motion for Rehearing En Banc Denied Dec. 13, 1978.

Hector F. Fabela and Joseph D. Martinec, Austin, for appellant.

Wiley L. Cheatham, Dist. Atty., Cuero, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for the offense of capital murder. Appellant was convicted for the murder of a Yorktown police officer, who was acting in his capacity as a peace officer at the time appellant shot him. On October 18, 1976, the jury answered "Yes" to the special issues submitted under Article 37.071, Vernon's Ann.C.C.P., and the punishment was assessed at death.

Appellant now contends that the trial court erred in allowing appellant's written statement to be introduced into evidence at the trial. After a hearing on appellant's motion to suppress, the trial court entered findings that the confession was voluntarily given, and that appellant had knowingly and voluntarily waived his right to counsel and his right against self-incrimination. The court therefore determined that the statement was admissible. At trial, the charge instructed the jury relative to the law concerning the admissibility of confessions in accordance with Article 38.22, Vernon's Ann.C.C.P.

Appellant argues that the confession was obtained in violation of the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that it thus should not have been used against him at trial.

The State initially contends that appellant has waived this ground of error, since he testified in his own behalf at trial and testified to substantially the same facts as contained in the statement. Where a defendant testifies in his own behalf and admits the truth of the testimony to which he previously objected, he waives his right to claim that he was harmed by the introduction of such evidence over his objection. However, he has not waived his right to claim harm if he introduces rebutting evidence in an attempt to meet, destroy or explain the evidence offered against him. Jackson v. State, 548 S.W.2d 685 (Tex.Cr. App.1977); Nicholas v. State, 502 S.W.2d 169 (Tex.Cr.App.1973).

In his testimony, appellant challenged the accuracy of several statements in the confession, stating that they were false and that he did not make them. While he admitted shooting the deceased, in his testimony he interjected a claim of self defense, thus seeking to explain his statements in the confession. He also contradicted statements in the confession relating to the sequence in which appellant and the deceased drew their guns. Thus, it appears that appellant has not waived this ground of error.

On July 11, 1976, appellant left a bar in Cuero and drove toward his home in Yorktown. Another driver called the Yorktown police and reported that appellant was weaving back and forth on the road. The deceased, a Yorktown police officer, responding to the report, stopped appellant's car and asked to see his driver's license. When handed the license, the deceased stated that he was going to take appellant to the police station. Appellant refused, and got back in his car and drove off. The deceased followed appellant to the driveway of the Ochoa home, where he pulled his car in the driveway behind appellant's. Appellant got out of his car and started towards the house. The deceased also got out of his car, and apparently drew his gun. Appellant testified that upon seeing the deceased's gun he got back into his car and reached under the seat and got his own

loaded pistol. Appellant further testified that he shot at the deceased, hitting him twice. The deceased fell, with his own gun beside him. Appellant told his father to get help, and the police arrived a few minutes later.

Appellant was arrested at the scene, at about 11:30 p. m., at which time he was given his *Miranda* warnings by Sheriff J. R. Adams. He was then handcuffed and taken to the Cuero jail, arriving at about 1:00 a. m. He was taken before a magistrate where he was again read his *Miranda* rights. Justice of the Peace Albert Ley testified that he explained these rights to appellant, and that appellant stated that he understood his rights and signed a paper.

At this point, the exact sequence of events becomes somewhat confusing. However, as nearly as this Court can ascertain, appellant was then taken to an interrogation room. Robert Post, the County Attorney, testified that he spoke to appellant and advised him of his rights. He stated that appellant did not wish to talk to him at this time, and he felt like appellant was not telling him anything so he left. Apparently, other unidentified officers were present on and off during this short period of time. Appellant testified that he requested an attorney during this interrogation, although Post denies that appellant did so while he was present.

Appellant was then taken to his jail cell. At about 3:30 a. m., Adams got appellant from his cell and took him to the interrogation room. Adams testified that he again read appellant his *Miranda* rights. Appellant testified that at this point he told Adams that he thought he should talk to an attorney before answering any questions or signing anything. At the hearing on the motion to suppress, Adams testified:

"A  [Adams] He [appellant] said that he would talk with me.

"Q  [Defense] He did not request an attorney?

"A  I think that he had made some mention as to he might possibly want to talk to an attorney. He didn't press the issue.

\*     \*     \*     \*     \*     \*

"Q  [Prosecution] Other than the occasion when you testified that at first the defendant was undecided about the lawyer, did he ever ask you to get a lawyer for him or anything of that nature any further?

"A  [Adams] No, sir.

\*     \*     \*     \*     \*     \*

"Q  Did he make any request for an attorney other than when he said that he was undecided there at first, that he might or might not want a lawyer?

"A  No, sir, he did not.

\*     \*     \*     \*     \*     \*

"Q  [Defense] Mr. Adams, you did testify earlier, did you not, that at the beginning of the interrogation he did make some statement about a lawyer, about wanting to talk to a lawyer?

"A  [Adams] Yes, sir, he did.

\*     \*     \*     \*     \*     \*

"Q  [Prosecution] Do I understand that he was undecided at that time whether he wanted one or not?

"A  [Adams] He did not make a formal request for a lawyer or say I don't want to talk to you; I want to see a lawyer first, no, sir."

Then, at the trial, the following testimony was heard:

"Q  [Defense] Well, didn't [appellant] actually mention wanting to talk to a lawyer to you?

"A  [Adams] Yes, sir, he did when we first went into the room. He said that he probably ought to talk to a lawyer or something to this effect or didn't want to sign anything until he talked to a lawyer, if I recall correctly. He then said something to the effect, 'Well, I will talk to you, but I don't want to sign anything.'

"Q  And that wasn't notice to you to get this man a lawyer?

"A  No, sir, he did not insist on a lawyer at that time.  .   .   ."

Apparently, right after appellant made the statement about a lawyer, Adams gave appellant coffee and cigarettes and began talking to appellant about families, horses and children. After they had talked about other matters for about 30 to 45 minutes, they began talking about the murder. Adams admitted that his purpose and intent in discussing marital problems, children and other matters with appellant was to calm and relax him and to "get on his good side," and to thus get appellant to make a statement. At 6:20 a. m., appellant signed a statement prepared by Adams. Appellant did not read the confession himself, but rather had Adams read it to him. On these facts, the trial court ruled the confession admissible.[1]

■ We conclude that, from the facts shown, the State has not met the heavy burden imposed by *Miranda v. Arizona, supra*, of demonstrating that appellant knowingly and intelligently waived his right to counsel.

In *Miranda*, the United States Supreme Court set out procedural requirements for law enforcement officials during in-custody interrogations. The Court made clear the necessity of advising criminal defendants of their right against self-incrimination and their right to counsel, and the requirement that once a defendant invokes a *Miranda* right all interrogation must cease. The Court stated:

"The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking *there can be no questioning.* . . . An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation

can be recognized unless specifically made after the warnings we delineate have been given. [Emphasis added.]"

The Court emphasized that once a defendant indicated in any way that he wanted an attorney interrogation must cease altogether. The Court further stated that while a defendant could change his mind once he invoked his right to counsel, if he does so and the interrogation continues, the State bears a heavy burden to demonstrate that the defendant knowingly and intelligently waived his right to counsel.

■ We read this language in *Miranda* literally; where a defendant indicates *in any way* that he desires to invoke his right to counsel, interrogation must cease.

Such literal reading of *Miranda* is supported by *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 325, 46 L.Ed.2d 313 (1975). In a discussion of the invocation of the analogous right to remain silent and the necessity of a cessation of interrogation at that point, the Supreme Court stated that:

"Resolution of the question turns almost entirely on the interpretation of a single passage in the *Miranda* opinion . . . 'Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.' "

See also *Hearne v. State*, 534 S.W.2d 703 (Tex.Cr.App.1976).

■ Thus, this Court must conclude that if appellant in any manner indicated his desire to have a lawyer, the continued interrogation was a violation of his *Miranda* rights and the confession obtained therefrom is inadmissible. We hold that appellant's statements to Adams concerning an attorney were sufficient to invoke his right to counsel. Although he did not make a "formal request" or absolute demand for a lawyer, he did in some manner indicate to Adams that he wanted to exercise his right

---

1. Appellant contends that the facts as he related them indicate that more happened in the interrogation room than that to which Adams

testified. However, the fact-finder is to resolve conflicting testimony, and apparently the trial court resolved such conflict against appellant.

to counsel. This was sufficient to require a cessation of interrogation.[2]

The burden was on the State to show that appellant specifically and affirmatively waived this right to counsel, and it did not do so. The only evidence that he waived his right to an attorney is the fact that subsequent to his conversation with Adams about families and horses he made a confession. In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court held that such a showing is not sufficient to show a waiver.

Since the State has not met its burden of showing that a voluntary, knowing and intelligent waiver of the right to counsel was made, the confession was inadmissible. *Miranda v. Arizona, supra; Brewer v. Williams, supra.*

▇ The State contends that the confession was nevertheless admissible since upon cross-examination, appellant admitted that he voluntarily signed the statement. A confession, in order to meet constitutional standards, must be both voluntary and taken in compliance with *Miranda*. If it meets one requirement but not the other, it is still inadmissible. *Miranda* imposes rigid requirements in order to insure the voluntariness of a confession, and these requirements must themselves be satisfied in order for a confession to be admissible.

Accordingly, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

VOLLERS, J., not participating.

DOUGLAS, Judge, dissenting.

The majority reverses this conviction even though appellant took the stand and admitted his guilt. The majority holds that the confession was inadmissible and reverses the conviction even though appellant testified to substantially the same facts proved by the confession. Summarily rejecting the State's theory of waiver or harmless error,

the majority stated that appellant, while testifying, interjected a claim of self-defense and thereby sought "to explain" the statements in his confession. What did he explain? An examination of the doctrine of harmless error or curative admissibility affirmatively demonstrates that appellant's testimony waived or, at least, rendered harmless any error in the admission of the confession.

Appellant's testimony was nothing more than a self-serving elaboration of the statements contained in the confession. The only conflicts concerned whether appellant had drawn his gun before the deceased had drawn his and whether appellant had made a threatening statement to the chief of police.

With regard to the sequence in which appellant and the deceased drew their guns, the confession reads:

". . . He (the deceased) said 'You're going to go.' I got back in my car and got my gun out. I had it in a holster under the seat. When I came out of the car he had his gun out of the holster. I said to myself 'he's not going to kill me right here at my own yard.' I shot at him three or four times. I saw him fall to the ground. . . ."

Appellant testified on direct examination as follows:

"A. Well, I drove to the house and he got in right behind me. I got out of the car and started to go in, told him I was going in, I was going to sleep. He told me again that I had to go with him.

"Q. Did he tell you at that time that you were under arrest?

"A. No.

"Q. Did he tell you why he wanted you to go in?

"A. No.

"Q. Okay. So he told you that you would have to go with him. What happened next?

---

2. There is no question that Adams was continuing interrogation by his conversation with appellant. So long as the officer's statements are designed to elicit incriminating statements from the defendant, as Adams admitted his were here, it is interrogation. See *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

"A. Well, I just didn't know. I turned around and, you know, I was facing the house and when I turned around I looked at him, seen he had a gun.

"Q. You saw that he had his gun. Do you mean in his holster or in his hand?

"A. He had it in his hand.

"Q. All right. What did you do next?

"A. I thought he was going to kill me. I just went in my car and got my gun.

"Q. What did you do?

"A. When I came back out he turned around, pointed the gun to me; I shot."

The second conflict was clarified on cross-examination. Appellant stated in the confession that the local police had been harassing him, that he had complained about this to the chief of police, and that he had warned the chief he "didn't want to do anything to them." Appellant testified, however, that he had not said he did not want to be forced to harm the officers who were harassing him.

The remaining alleged discrepancy was merely a matter of semantics. In this connection, the record reflects:

"Q. Well, in other words, except the place where you said that it is in error about you getting your gun out before the officer had his gun out and that about that you didn't want to do anything to the officer you talked to Mr. Nobles about. Is the rest of the statement true and correct?

"A. Well, those—no, it is not correct; not in my words.

"Q. All right. What is not correct, then? Let's get that straight.

"A. It says there that the man said he was going to take me in. He never told me he was going to take me in. He said I had to go with him.

"Q. Well, what is the difference between you having to go with him and him taking you in? Just the way he said it, is that what you are talking about?

"A. Right."

Heretofore, the doctrine of curative admissibility—that an accused may not complain of the admission of illegally obtained evidence where he testifies to substantially the same facts proven by the challenged evidence—has been consistently followed by this Court. See, e. g., Cameron v. State, 530 S.W.2d 841 (Tex.Cr.App.1975); Lovell v. State, 525 S.W.2d 511 (Tex.Cr.App.1975); Wood v. State, 523 S.W.2d 248 (Tex.Cr.App. 1975); Melton v. State, 511 S.W.2d 957 (Tex.Cr.App.1974); Owens v. State, 503 S.W.2d 271 (Tex.Cr.App.1974); DeLeon v. State, 500 S.W.2d 862 (Tex.Cr.App.1974); Moulton v. State, 486 S.W.2d 334 (Tex.Cr. App.1972); Williams v. State, 479 S.W.2d 300 (Tex.Cr.App.1972); and Palmer v. State, 475 S.W.2d 797 (Tex.Cr.App.1972).

In McLaughlin v. State, 109 Tex.Cr.R. 307, 4 S.W.2d 54 (1928), this Court first used the phrase "meet, destroy or explain" to describe those situations where no waiver occurs. It is clear from that case, however, that where the accused admits the truthfulness of evidence to which he objects he has waived any error in the admission of such evidence.

Later cases also indicate that waiver of the error in admitting illegally obtained evidence occurs if the accused admits the existence of those facts even though he is attempting to "explain" the circumstances surrounding those facts. In Parker v. State, 384 S.W.2d 712 (Tex.Cr.App.1964), the defendant was stopped for a traffic violation. The arresting officer observed two barbiturate capsules in the defendant's hand as the defendant searched for his driver's license. At trial, the defendant testified that he did have the capsules in his hand but claimed that he had noticed them on the floor of his van and had picked them up immediately prior to being stopped. He stated that he did not know what they contained. Nevertheless, he was convicted for possession of a dangerous drug. On appeal, we held that the defendant had waived any error in the admission of the capsules because he had admitted that he

had possessed them despite his attempt to "explain away" such possession.

In *Lester v. State*, 498 S.W.2d 927 (Tex. Cr.App.1973), narcotics officers established a surveillance of an El Paso house as the result of a tip received by a United States Customs Officer that marihuana was going to be delivered to that address. The officers observed defendants Lester and Shea put what the officers believed to be marihuana into an automobile. The defendants drove away and the officers followed them. When the officers attempted to stop the defendants, numerous shots were exchanged. One officer and Lester were wounded. Shea was convicted of assault with intent to murder without malice and Lester was convicted of aggravated assault.

The defendants contended on appeal that the guns taken from them following their arrest were the fruits of an illegal search and were erroneously admitted in evidence. We found it unnecessary to pass upon the legality of the arrest since the defendants testified on direct examination that they had the guns in their possession. We stated that "[h]aving voluntarily taken the stand at the guilt stage and on direct examination admitted having an exchange of gunfire with the officers, [defendants] cannot question the lawfulness of the search where the guns were seized. . . ." 498 S.W.2d at 929.

In *Nicholas v. State*, 502 S.W.2d 169 (Tex. Cr.App.1973), we reasoned that the doctrine of curative admissibility is based on the introduction by the accused of other evidence of the *same facts*, without objection, and not merely the introduction of other evidence on the same subject or a different use of an exhibit in question. Moreover, we again established that even where the accused testifies in his own behalf in order to "meet, destroy or explain" the improperly admitted evidence, he waives any objection to such evidence if he proves substantially the same facts as those in question. Thus, the fact that the accused's admissions are made while attempting to establish a defense will not preclude a waiver.

In the instant case, appellant complains of the admission of the confession even though he later testified on direct examination to substantially the same facts. Excepting two self-serving variations, he testified to the same facts as contained in the confession and even went into greater detail about the circumstances surrounding the offense.

Appellant's testimony did not "explain" the facts relating to the offense as that term has been construed by our cases. Rather, he merely confirmed the substance of the statements made in the confession. His defense of self-defense had already been raised by one of those statements: "I said to myself 'he's not going to kill me right here at my own yard.'" The majority should point out what he explained.

Moreover, although appellant may well have taken the stand in order to minimize the injury resulting from the admission of the confession, this was a product of his own trial strategy, not the result of impulsion or compulsion on the part of the State. *See Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). His admission that he shot the deceased was made solely to enhance his defense. Having admitted to the truthfulness of the facts contained in the confession, he cannot now be heard to complain that the confession was inadmissible. *Wood v. State*, supra; *Melton v. State*, supra; *Owens v. State*, supra; *DeLeon v. State*, supra. To hold otherwise would allow an accused to voluntarily testify in his own self-interest and then protest on appeal that he was "impelled" to do so because of the strength of the State's evidence against him.

We should adhere to the well-established doctrine of curative admissibility and hold that any error in the admission of the confession was waived or rendered harmless. The judgment should be affirmed.

DALLY and W. C. DAVIS, JJ., join in this dissent.

VOLLERS, J., not participating.