**Arthur Lee KELLY, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60575.**

Court of Criminal Appeals of Texas, Panel No. 2.

June 24, 1981.

Ronald W. Quillin, Fort Worth, for appellant.

Tim Curry, Dist. Atty. & William Kane, Howard Borg, Joe Drago & James J. Heinemann, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder, in which the jury assessed appellant's punishment at ninety-nine (99) years' imprisonment.

Appellant contends that the trial court erred in overruling his motion to suppress his extrajudicial confession. Appellant admitted in a written statement the slaying of Portia Ann Jackson, who was employed for the evening of March 22, 1977, as a dancer at the Salt and Pepper Club in Fort Worth. Appellant stated that he and his brother Ricky Kelly returned to the club seeking revenge after a fracas with a bartender led to appellant's ejection. He admitted that they knocked on the back door of the club, and then each fired a shotgun at the deceased as she opened the door, striking her in the face.

Appellant specifically contends that the Fort Worth police violated the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by questioning him in the absence of counsel while aware that he desired consultation with an attorney, and by continuing their questioning after appellant expressed a desire to remain silent. A chronological review of the evidence adduced at the hearing on his motion to suppress the confession will serve to put these contentions in perspective.

According to the State's evidence presented at that hearing, Fort Worth police officers procured a warrant on the basis of hearsay information implicating appellant in the murder, and arrested him on March 31, 1977. Appellant was warned of his constitutional rights to remain silent and to have an attorney present prior to and *during any questioning, and indicated* that he understood those rights. He was then taken before a magistrate who again advised him of his rights, had him sign an *acknowledgment of receipt of that advice,* and noted on the acknowledgment form that appellant had no questions or requests at that time.

After being booked into the city jail, appellant was first taken upstairs, apparently to police department offices, at 7:45 P.M. on March 31, 1977, to be interviewed by Detective Alvin Gene Meyer for 25 to 30 minutes. Meyer testified that he warned appellant of his rights to remain silent and to have an attorney present prior to and during questioning *on this occasion and every subsequent time he talked to appellant, and that* appellant indicated that he understood. He stated that appellant never requested to see an attorney and refused several offers of a telephone for use in calling one, and that appellant never stated that he did not wish to talk to Meyer, during this or any of their subsequent discussions. However, Meyer also testified that appellant "wasn't saying a whole lot about anything" during at least their first interview session.

Appellant was brought upstairs at 10:00 A.M. on the following day, April 1, 1977, to meet with his mother, pastor and aunt for approximately 40 minutes, and appellant prayed with the pastor. No questioning transpired. At 12:40 P.M., Meyer and Detective C. D. Timmons "checked him out" for questioning, but appellant was returned to the jail 27 minutes later without admitting participation in the murder.

Appellant was brought upstairs for the fourth and final time at 2:00 P.M. at the request of his brother, who was also in custody; however, Meyer talked to appellant for 25 to 30 minutes on this occasion, and Detective George Killough also spoke to him for 10 to 15 minutes during Meyer's temporary absence.

Appellant's mother arrived at 3:10 P.M., and she spoke to appellant and his brother for "quite some time." Appellant's mother made several unsuccessful attempts to contact an attorney during this period in the presence of appellant and Meyer, but Meyer made no effort to assist, apparently because "during this time, the discussion was between him and his brother and his mother." After she made the calls, Meyer testified, appellant said to his brother, "Let's go ahead and tell him about it."

Meyer then again warned appellant of his constitutional rights as set out on the "blue card" which he carried for that purpose, and appellant indicated that he understood. Meyer then proceeded to type appellant's oral statement as it was related to him. He typed it onto a form which commenced with a recitation of the constitutional rights of an accused,[1] and also contained the following waiver of his constitutional rights: "Having been informed of these, my rights, and understanding same, I hereby freely,

1. "I, Arthur Lee Kelly, Jr., prior to making any statement, having been duly warned by Det. A. G. Meyer, the person to whom this statement is made; that I have the right to have a lawyer present to advise me prior to any questioning and during any questioning, and if I am unable to employ a lawyer, I have a right to have a lawyer appointed to counsel with me prior to and during any questioning, that I have the right to remain silent and not make any statement at all and any statement I make can and may be used in evidence against me at my trial. If I choose to answer questions I may stop answering them at any time."

voluntarily and knowingly waive these rights and not desiring a lawyer voluntarily choose to make the following statement."

Afterwards, appellant read the transcription of his statement, initialed the typographical corrections therein, and then signed the statement and waiver of his rights at about 4:30 P.M. in the presence of a disinterested witness, who also signed the one page document.

Appellant testified at the hearing on his motion to suppress that he was warned of his constitutional rights only by the magistrate before making his confession. He stated that he repeatedly told Meyer and Killough that he did not wish to talk to them, and that Meyer refused him permission to contact an attorney. Appellant also detailed various instances of physical abuse that Meyer and Timmons allegedly inflicted upon him,[2] and stated that he confessed only because he was afraid of what the police would do to him.

Appellant presented testimony from Sammy Williams, who was also suspected of participation in the offense and who testified for the State in its case-in-chief, that he was present during a portion of appellant's interrogation, and heard Meyer refuse appellant's request for an attorney.

The trial court's written order overruling appellant's motion to suppress the confession, filed pursuant to Article 38.22, V.A.C.C.P., contains findings that appellant "has the mental capacity to understand the language that was spoken to him and at that particular time was alert and could relay to Det. A. G. Meyer his idea (sic) and his thought," that appellant was "warned, according to his own testimony, before the statement was given," and that appellant "knew his constitutional rights" and "waived his constitutional rights at the time and entered into making of this statement with Det. A. G. Meyer, after _____ had warned him under the Miranda theory of his constitutional rights."[3]

The trial judge also made oral findings at the conclusion of the motion to suppress hearing that appellant's "constitutional rights have not been denied and he received due process all the way through ...";  and that he was "particularly impressed whenever I heard evidence that his family was there to see him twice prior to the execution of the statement."

■ It is well settled that at a hearing on the admissibility of a confession, the trial court is the trier of the facts and judge of the credibility of the witnesses and the weight to be given their testimony; he can accept or reject the testimony of witnesses, including a defendant, in determining the issues before him. White v. State, 591 S.W.2d 851 (Tex.Cr.App.1979); McKittrick v. State, 541 S.W.2d 177 (Tex.Cr.App.1976), and cases cited therein.

Much of appellant's and Williams' testimony was refuted by the State's witnesses, and under the foregoing authorities, we are foreclosed from tampering with the trial court's ruling on the basis of such evidence.

However, appellant also relies on testimony which was corroborated rather than refuted by the State's witnesses, in support of his claim that the trial court erred in finding appellant's constitutional rights under Miranda, supra, were fully observed. He points to Meyer's confirmation that the detective was aware of the fact that appellant's mother made at least two unsuccessful attempts to contact an attorney just before appellant decided to "go ahead and tell him about it."

In Miranda, supra, the Supreme Court of the United States, concerned with the coercive atmosphere of custodial interrogation, required that suspects be warned of their constitutional right to remain silent and their right to counsel as a prerequisite to the taking of an admissible self-inculpatory statement. The Court also stated:

---

2. We omit a recitation of the accusations and denials of physical mistreatment during the interrogation sessions, as appellant does not contend on appeal that his confession was involuntary or coerced.

3. The trial court utilized what appears to be a form order in which the names of particular parties are to be filled into the appropriate spaces. One space was left blank.

"The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. 444, 86 S.Ct. 1612.

■ In applying these rules to the situation presented by Meyer's testimony, we first observe that appellant neither personally advised Meyer of his desire to consult an attorney, nor personally attempted to contact one. We decline to equate an attempt by a member of the family of an accused to contact a lawyer, which is overheard by a police officer, with an indication by the accused that he desires consultation with counsel prior to any questioning. Appellant's mother may have acted on her own despite the indifference or even opposition of her son. No violation of *Miranda* supra, is shown.

■ Furthermore, the trial court found that appellant made a valid waiver of his constitutional rights at the time of the making of his statement, subsequent to the attempts of his mother to contact an attorney, and we are unable to say that finding was erroneous. The following discussion of the requirement of a knowing and intelligent waiver of the rights of an accused appears in *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979):

"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda*, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."

The United States Supreme Court addressed the question of waiver most recently in *Edwards v. State of Arizona*, —— U.S. ——, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and held that an accused, once "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police."

■ In the instant case, there was evidence that appellant was warned of his constitutional rights on numerous occasions, both orally and in writing. The trial court, having observed appellant testify, found that he was mentally capable of understanding those warnings and invoking his rights. Appellant was not held incommunicado during questioning, but was instead permitted to confer with his family members and pastor, and was in fact conferring with two members of his family when he decided to admit his participation in the offense. That decision was not made in response to police questioning; appellant initiated the communication with police which resulted in his signing a written waiver of his right to counsel and making his statement. We hold that, considering the totality of the circumstances, the trial court did not err in finding a knowing and intelligent waiver of counsel and the right to remain silent. See *Williams v. State*, 566 S.W.2d 919 (Tex.Cr.App.1978); *Nash v. State*, 477 S.W.2d 557 (Tex.Cr.App.1972); *Hill v. State*, 429 S.W.2d 481 (Tex.Cr.App. 1968); *McKittrick v. State*, supra.

Appellant argues that the factual situation in *Ochoa v. State*, 573 S.W.2d 796 (Tex. Cr.App.1978), is similar to that in the instant case and requires reversal of his conviction, but in *Ochoa* a police officer ignored the defendant's statement that he

"might possibly want to talk to an attorney," and continued the conversation until a confession was coaxed from the defendant. The facts of this case are far different from those in *Ochoa*, and we do not find it controlling.

■ Appellant also relies on Detective Killough's testimony concerning his brief conversation with appellant in Meyer's absence, during the last session of questioning before the arrival of appellant's mother. Asked what he and appellant talked about, Killough testified that, "I asked him if he wanted to tell us what happened at the Salt and Pepper and he told me he didn't have anything to say about it."

Appellant argues that this testimony reveals a violation of that part of *Miranda* which states:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. 473, 86 S.Ct. 1627.

The United States Supreme Court has also held that the "admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his right to cut off questioning was 'scrupulously honored'." *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

While a statement like that of appellant to Killough is a sufficient invocation of the right to remain silent to require cessation of questioning, *Hearne v. State*, 534 S.W.2d 703 (Tex.Cr.App.1976), the record fails to show any further questioning occurred in this case. Appellant testified that after making the above-quoted statement to Killough, "he left and Meyer came back." Although it is clear that Meyer was present while appellant conversed with his family members afterwards, there is no evidence in the record that he further interrogated appellant after Killough's departure and prior to appellant's decision to confess. Nor is there any evidence that Killough communicated appellant's remark to Meyer. See

*Williams v. State*, 566 S.W.2d 919 (Tex.Cr. App.1978). Again, no violation of *Miranda*, supra, is shown.

We also note that the United States Supreme Court in *Mosley*, supra, at 423 U.S. 102, 96 S.Ct. 326, held that nothing in the *Miranda* opinion "can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject once the person in custody has indicated a desire to remain silent."

■ Thus it is possible for an accused, who previously asserted his right to remain silent, to answer the questions of police or provide them with a confession, particularly where it is shown that the defendant initiated the subsequent conversation with police and then knowingly and intelligently waived his constitutional right to remain silent. *White v. State*, 591 S.W.2d 851 (Tex.Cr.App.1979); *Harris v. State*, 516 S.W.2d 931 (Tex.Cr.App.1974) (Onion, P. J., concurring).

Appellant particularly relies on *Hearne*, supra, arguing that the police were barred from taking his confession after he told Killough that he did not want to talk about the offense. But in *Hearne*, the defendant informed police that he didn't want to talk to them, yet a determined police officer continued to question him for 30 minutes until the defendant was "persuaded" to admit his participation in the offense under investigation. No such persistent questioning after appellant's statement to Killough is shown by the record in the instant case.

Having already found that the trial court did not err in finding that appellant made a knowing and intelligent waiver of his right to remain silent and his right to counsel, we overrule appellant's ground of error.

Appellant also contends that the trial court erred in admitting into evidence a photograph of the deceased which reveals the shotgun wounds she sustained in the facial area. He argues that the photograph should have been excluded because its probative value was vastly outweighed by its inflammatory aspects.

If a photograph is competent, material and relevant to an issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene of the crime is admissible, then a photograph depicting the same is admissible. *Martin v. State*, 475 S.W.2d 265 (Tex. Cr.App.1972); *Burks v. State*, 583 S.w.2d 389 (Tex.Cr.App.1979), and cases cited therein.

The Chief Medical Examiner for Tarrant County, who performed the autopsy on the deceased, properly testified as to the nature and extent of the wounds he found during his examination. The photograph revealing these wounds was also properly admitted, and appellant's ground of error is overruled.

The judgment is affirmed.

CLINTON, J., concurs in the result.