**Juan GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–91–00213–CR.**

Court of Appeals of Texas, Dallas.

March 4, 1992.

Rehearing Denied April 1, 1992.

Larry Finstrom, Dallas, for appellant.

Suzanne Kirby Perkins, Dallas, for appellee.

Before STEWART, CHAPMAN and KAPLAN, JJ.

## OPINION

STEWART Justice.

Juan Garcia appeals the trial court's denial of his motion to suppress oral confession and evidence. After the trial court denied his motion, appellant pleaded guilty to the offense of unlawful possession of a controlled substance. Pursuant to a plea-bargain agreement, the trial court assessed punishment at fifteen years' confinement and a $1000 fine. In compliance with the plea bargain agreement, the trial court granted appellant permission to appeal the ruling on the motion to suppress. Appellant complains in his sole point of error that the trial court abused its discretion in denying his motion to suppress oral confession and evidence and in overruling his motion for a new trial that urged the trial court had erred in its ruling on the motions. We overrule his point of error and affirm the judgment of the trial court.

## BACKGROUND FACTS

The trial court held a hearing on the search warrant, the affidavit, and the oral confession on July 6, 1990. Dallas Police Officer Ted Shinn testified that he prepared an affidavit based on information a confidential informant provided that certain persons at a particular apartment possessed cocaine. The informant told Shinn that appellant was a large distributor of cocaine, which he usually sold in half-kilogram quantities. Shinn obtained a search warrant for the premises. During the execution of the search warrant on January 10, 1990, the officers discovered cocaine and arrested appellant. Shinn testified that a tactical unit made a forcible entry into the apartment with a stun grenade. He explained that the tactical team used a stun grenade in this case because the informant indicated that appellant had a weapon. The only people known to be in the apartment when Shinn obtained the warrant were appellant and his common-law wife, Kristi Valencia.

After the tactical team made the entry, they brought appellant, Kristi, and two children whom appellant was babysitting outside the apartment. Because the apartment had too much smoke to conduct a search, Shinn approached appellant. Shinn testified that he advised appellant of his *Miranda* [1] rights in English and that appellant said he understood English. Once appellant indicated that he understood his rights, Shinn questioned him and told him that the police could either search the apartment after the smoke cleared or appellant could tell them where the cocaine was located. Shinn testified that appellant did not ask for a lawyer. Shinn stated that appellant gave an oral statement telling Shinn that there was cocaine in the cabinet under the bathroom sink and on the dining room table. Because Shinn could not find the cocaine in the bathroom, he asked appellant to show him the cocaine. According to Shinn's testimony, they went into the bathroom and appellant told Shinn that the tampon box in the cabinet contained the cocaine. Inside the tampon box, Shinn found a plastic bag containing approximately ninety grams of cocaine. In the dining room, four papers of cocaine contained 2.6 grams of cocaine. Further, an independent search of the apartment uncovered sixty-six grams of marijuana in the bread basket, cocaine residue in Kristi's purse, weighing scales, a semi-automatic pistol, and $1028 in cash on appellant.

On cross-examination, Shinn testified that the tactical team decided to use a stun grenade because of the information that appellant had a weapon. After the stun grenade was deployed, Shinn entered the apartment and discovered that the stun grenade had landed on a baby walker. He testified that appellant was angry because the baby had been in the walker just minutes before the stun grenade came through

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the window. Shinn also testified that appellant did not appear shaken or disoriented from the stun grenade. Shinn explained that he began questioning appellant five to ten minutes after the grenade went off. Further, Shinn indicated that appellant did not voice his concerns about Kristi until after he led police to the cocaine. Shinn also testified that Kristi did not tell him about problems with her pregnancy or her later miscarriage, despite several conversations with her after appellant's arrest.

The trial court reopened the hearing on the motion to suppress on August 31, 1990, to determine the voluntariness of the confession. Appellant testified that he was three feet away from the stun grenade when it went off. He stated that the stun grenade caused a flash of light and smoke and that the stun grenade broke dishes in the china cabinet, put a hole in the sofa, and pulled nails out of the walls. Appellant also testified that the police entered the apartment and held him to the floor with guns to his head. He explained that, at the time of his arrest, he and Kristi were babysitting a two-year-old child and a nine-month-old baby. Further, appellant testified that he believed that the stun grenade caused Kristi to have a miscarriage.

According to appellant, Shinn did not read him his rights until just before leaving for the police department, an hour after the discharge of the stun grenade. Appellant testified that he did not regain the use of his faculties for forty-five to fifty minutes following the discharge of the grenade and that he does not recall assisting the police search for the cocaine. He remembered the police taking him into the bathroom and asking him if that was all the cocaine he had. Appellant maintained that he did not show the officers where to find the cocaine.

On cross-examination, appellant admitted that he, Kristi, and the children were not injured or knocked unconscious by the stun grenade. He stated that the stun grenade caused Kristi's miscarriage and that he asked the police to take her to the hospital. Appellant admitted, however, that he did not tell Shinn that he was hurt or not feeling well. Further, he testified that the officers did not threaten him, Kristi, or the children.

Kristi Valencia testified that the grenade scared her and that the police immediately removed her and the children from the apartment after the grenade went off. She explained that she started bleeding the night of the arrest and that she suffered a miscarriage four days later.

Dallas Police Officer Curtis Fortner, assigned to the tactical division, testified that the stun grenade is a diversionary device. He explained that a stun grenade is a three-inch-long cylinder that, when discharged, emits a loud noise and bright flash of light, but does not contain shrapnel. Fortner stated that the purpose of the stun grenade is to temporarily stun people so officers may enter a location without gunfire. Fortner testified that the bright flash of light from a discharged stun grenade is similar to a flash bulb going off near one's face and that the loud noise causes a ringing in the ears. He explained, however, that the effects from a stun grenade are temporary and disappear within fifteen to thirty seconds.

Fortner testified that the tactical team decided to use the stun grenade because of the report that two men at this address had handguns and because the apartment was a stash-house for drug dealers. According to Fortner, the report indicated that the men would store the drugs at this location and sell the cocaine at a different location. Thus, based on this information, the officers determined that a stun grenade was in their best interest for protection. Fortner testified that he delivered the grenade through the window and that the police forcibly entered through the door. Fortner stated that, when he entered the apartment, appellant was standing in the living room and Kristi was on the sofa with one of the children. He testified that appellant acted normal and did not hesitate in cooperating with police commands. Fortner noted that the stun grenade had burned and shattered the baby walker where it landed. On cross-examination, Fortner testified that the presence of a pregnant woman in the apartment with the stun grenade might

have concerned him, but he knew of no evidence that a stun grenade could cause a miscarriage.

The State recalled Shinn to testify. Shinn explained that the tactical unit took about three minutes to secure the apartment and that he waited for the smoke to begin to clear before taking a quick look inside. Shinn testified that he identified himself to appellant and read appellant his rights before questioning him. He stated that appellant did not have trouble standing and appeared coherent. Although appellant expressed concern for Kristi and the children, Shinn testified that no one in the apartment sustained physical injuries from the stun grenade. He explained that the grenade is only a safety measure used to temporarily disable persons so officers can enter an area without gunfire.

Shinn also described how he found the drugs with appellant's assistance in the bathroom cabinet. Shinn maintained that no threats or promises were made in exchange for appellant's cooperation and that appellant never indicated he did not want to talk to the officer. Further, Shinn testified that appellant contacted him five days after the arrest to see if he could work his case off by acting as an informant in other drug cases. Shinn stated that appellant never mentioned Kristi's miscarriage or that he felt the stun grenade caused the miscarriage.

## VOLUNTARINESS OF CONFESSION

In appellant's sole point of error, he argues that the trial court erred in denying his motion to suppress the oral confession because the confession was involuntary. Appellant contends that he did not make the statement freely and voluntarily because he made it while under the trauma of the stun grenade. In short, appellant argues that the use of the stun grenade coerced the statement from him. The State responds that appellant freely and voluntarily waived his rights and made the oral statement.

The determination whether a confession is voluntary must be based on the totality of circumstances surrounding its acquisition. *McCoy v. State,* 713 S.W.2d 940, 955 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). When a question is raised as to the voluntariness of a statement of an accused, the trial court must hold a hearing outside the presence of the jury to determine if the accused made the statement freely and voluntarily. *Jackson v. Denno,* 378 U.S. 368, 376–78, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964); TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979). The State bears the burden of proof to show that the statement was voluntary. *Gentry v. State,* 770 S.W.2d 780, 789 (Tex.Crim.App.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989). The State must satisfactorily explain the accused's allegations of coercion in order to satisfy its burden of proof. *Farr v. State,* 519 S.W.2d 876, 880 (Tex.Crim.App.1975). With controverted evidence, the trial court is the sole trier of facts and the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *McCoy,* 713 S.W.2d at 955. The trial judge can accept or reject the testimony of the witnesses. *Kelly v. State,* 621 S.W.2d 176, 179 (Tex. Crim.App.1981). The appellate court's review of the trial court's findings is limited to determining whether the trial court abused its discretion. *Id.* A trial court's findings in a hearing on the issue of the voluntariness of a confession will not be overturned when there is evidence to support the findings. *Barton v. State,* 605 S.W.2d 605, 608 (Tex.Crim.App.1980).

Here, the record reflects conflicting testimony about the effects of the stun grenade on appellant. The trial judge was the sole judge of the credibility of the witnesses at the hearing on the voluntariness of the confession. Because there is evidence to support the trial court's finding that the confession was freely and voluntarily given, we cannot rule that the trial court abused its discretion. *Barton,* 605 S.W.2d at 608. We hold that the trial court did not err by overruling appellant's motion to suppress and overrule appellant's point of error.

We affirm the judgment of the trial court.

KAPLAN, J., dissents and files an opinion.

KAPLAN, Justice, dissenting.

I respectfully dissent.

In my view, the totality of the circumstances negates any possibility of a voluntary confession by the appellant. The surprise assault on appellant's apartment by the tactical squad created an inherently coercive environment which resulted in an illegal confession and the ultimate discovery of the evidence. I would hold that the trial court abused its discretion in finding that the appellant freely and voluntarily waived his *Miranda* rights under the circumstances presented in this case.

The record graphically illustrates the physical destruction caused by deployment of the stun grenade. The grenade landed in an empty baby stroller just three feet from appellant. A baby had been removed from the stroller only minutes earlier. The stroller was burned and shattered. The explosion broke all of the plates in the china cabinet, pulled the sheetrock one-and-one-half inches out of the ceiling, and burned a hole in the sofa and carpet. The apartment was filled with smoke and the occupants had to be evacuated before the police conducted their search.

Officer Shinn indicated that appellant was upset about the baby at the time he was read his *Miranda* rights and questioned about the cocaine. Specifically, the record reflects the following testimony given by Shinn:

Q: [BY PROSECUTOR]
How did you lead into the fact of asking the defendant about where some cocaine was after you read him his rights?
A: [BY OFFICER SHINN]
Okay. Well, number one, it was all smoky and everything like that. I told Mr. Garcia, I asked him, I said—I said, "Is there any cocaine?" He said, "What cocaine?" I said, "Well", I said, "we can go in here after the smoke clears out, we can look through your personal items and try to find cocaine, or you can just show us where it is or tell us—you can tell us where it is."

That's when Mr. Garcia started, you know—*he was upset over the baby, because from the stun grenade and everything like that, still, we could have killed the baby and all that, he was worried about that.*

He eventually said, "I'll show you where it is." I said, "No, just tell me where it is." And that's when he told me that there was some cocaine on the dining room table and there was some cocaine in the bathroom. That's when I couldn't find it."

(Emphasis added). This testimony by Officer Shinn shows appellant's state of mind during questioning leading to the discovery of the cocaine. Clearly, appellant was upset and worried about the baby because of the destruction wreaked by the stun grenade.

Officer Fortner testified that the stun grenade is designed to stun and disable people long enough for the police to gain control of the premises. Officer Fortner also stated that a stun grenade contains no shrapnel, but he did not dispute the shrapnel-like effect that could result when a grenade blasts a baby stroller to pieces.

No one disputes that appellant was stunned or disabled immediately upon detonation of the stun grenade. Appellant testified that he did not regain his faculties for forty-five to fifty minutes following the explosion of the grenade. Shinn and Fortner testified that they had experienced the detonation of the stun grenade and that the explosion affected *them* only for fifteen or twenty seconds. Officer Fortner's testimony was not altogether clear whether he had experienced the impact of an exploding stun grenade as a result of training or from accidental misfires in actual tactical assaults. Officer Shinn was clear that his limited experience with a stun grenade occurred when one accidentally went off behind him as he was running *away* from the site of impact. In whatever way the officers experienced close-up detonations of stun grenades, at least they were fore-

warned. They knew that the devices were in the vicinity and potentially capable of being detonated. The officers also knew that their chances of being seriously harmed were remote.

In stark contrast, appellant was within the privacy of his apartment when suddenly a stun grenade was hurtled through a window. The only other occupants of the apartment were his pregnant wife and two young children. He had no warning that anything out of the ordinary was about to happen. Appellant testified that, when he heard the noise and saw the blinding light, his first impression was that something had malfunctioned with the TV or VCR. It necessarily took him some time just to realize what actually occurred. Nevertheless, the majority ignores the totality of the circumstances and defers to the subjective observations and conclusions of the police officers that the explosion did not prevent appellant from effectuating a knowing or voluntary waiver of his *Miranda* rights.

Officer Fortner testified that he was unaware at the time of the tactical squad's forcible entry that any woman, let alone a pregnant one, or any children were in the apartment. He said that the tactical unit would not have used a stun grenade if they had realized that there were young children in the house. Officer Shinn knew that appellant and his wife were in the apartment, but did not know that she was pregnant. Officer Shinn admitted that appellant expressed concern for his pregnant wife.

It is true that appellant, his wife, and the two young children they were babysitting were not injured. But the effect of seeing the shattered stroller from which appellant had just removed a baby would scarcely be mitigated by the later realization that the four of them were, after all, unharmed. When the majority states that no threats were made to appellant, it can mean only that there were no articulate, verbal threats made subsequent to the forcible entry by the tactical squad. It may be that the officers would not have used a stun grenade if they had been aware that a pregnant woman and two young children

were inside the apartment with appellant. That consideration, however, is irrelevant to the impact that the detonation of the grenade and forcible entry into the apartment had on appellant under the circumstances of this case.

Officer Shinn stated that he began to question appellant five to ten minutes after the grenade exploded. As a result of this interrogation, appellant led the police to the cocaine in the bathroom. Within this five to ten minute period: (1) appellant endured a totally unexpected stun grenade hurtled through the window; (2) appellant saw that the sheetrock from the ceiling was pulled out, holes were burned in the sofa and carpet, all the dishes in the china cabinet were shattered, and a stroller from which appellant had just removed a baby was demolished; (3) appellant knew that his wife was seven months pregnant; (4) everyone had to be evacuated from the apartment because of the smoke; and (5) appellant was not immediately reunited with the others while the police questioned him. Nonetheless, the majority concludes that this short time interval was sufficient for appellant to regain his senses and make a voluntary confession, without regard to the awesome display of police power that he had just witnessed.

I do not believe that the confession given by appellant passes muster under the totality of the circumstances. A confession is not admissible if it is obtained by any sort of threat or violence, however slight, nor by the exertion of any improper influence. *Tovar v. State*, 709 S.W.2d 25, 27 (Tex. App.—Corpus Christi 1986, no pet.); *see also Roberts v. State*, 545 S.W.2d 157, 160–61 (Tex.Crim.App.1977). The devastating effects of the stun grenade under the circumstances presented in this case constituted an inherently coercive environment which prevented appellant from effectuating a free and voluntary waiver of his constitutional rights. *Cf. Russell v. State*, 739 S.W.2d 923, 931 (Tex.App.—Dallas 1987, pet. granted) (Whitham, J., dissenting). Accordingly, the evidence obtained as a result of this illegal confession should be suppressed.

I would reverse the judgment of the trial court and remand this case for further proceedings.