ACCEPTED
06-14-00174-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/15/2015 11:23:29 AM
DEBBIE AUTREY
CLERK

**06-14-00174-CR**

# IN THE COURT OF APPEALS FOR THE

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/15/2015 11:23:29 AM
DEBBIE AUTREY
Clerk

# SIXTH APPELLATE DISTRICT OF TEXAS

# TEXARKANA, TEXAS

_____

### RODERICK BEHAM,

**Appellant**

**v.**

### STATE OF TEXAS,

**Appellee**

_____

## BRIEF FOR APPELLANT

_____

### APPEAL FROM THE 5th DISTRICT COURT
### BOWIE COUNTY, TEXAS

## Trial Court No. 14 F 0004 005

## ORAL ARGUMENT IS REQUESTED

**Garrett Smith**
**SBN: 24088426**
**1616 Falcon Ridge Blvd**
**Friendswood, Texas 77546**


**garrett_smith1@yahoo.com**

**Alwin A. Smith**
**SBN: 18532200**
**602 Pine Street**
**Texarkana, Texas 75501**
**903-792-1608**
**903-792-0899 Fax**
**al@alwinsmith.com**
_Attorney for Appellant_

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a) (2005), the parties to this suit are as follows:

1.     **Roderick Beham** is the Appellant and was the Defendant in trial court.

2.     **The State of Texas,** by and through the Bowie County Criminal District Attorney's Office, 601 Main Street, Texarkana, Texas, is the Appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

1.     **Roderick Beham** was represented by **Chad Crowl**.

2.     **The State of Texas** was represented by **Jerry D. Rochelle,** District Attorney and **Samantha Oglesby**, Assistant District Attorney.

The appellate attorney is as follows:

1.     **Roderick Beham** is represented by **Alwin A. Smith**, 602 Pine Street, Texarkana, Texas   75501.

2.     **The State of Texas** is represented by **Jerry D. Rochelle**, District Attorney, 601 Main Street, Texarkana, Texas 75501.

# TABLE OF CONTENTS

**Page**

Identity of Parties and Counsel . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . iv

Statement of the Case . . . . . . . . . . . . . . 1

Issues Presented . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . 3

Summary of the Argument . . . . . . . . . . . . . . 5

Argument and Authorities . . . . . . . . . . . . . . 7

    **Issue No. 1:** . . . . . . . . . . . . . . 7

    **Issue No. 2:** . . . . . . . . . . . . . . 7

    **Issue No. 3:** . . . . . . . . . . . . . . 16

    **Issue No. 4:** . . . . . . . . . . . . . . 23

    **Issue No. 5:** . . . . . . . . . . . . . . 23

Conclusion . . . . . . . . . . . . . . 35

Certificate of Service . . . . . . . . . . . . . . 36

# INDEX OF AUTHORITIES

**Cases**                                                        **Page**

*Alford v. United States*, 282 U.S. 687 (1931) . . . . . . . . . . . . . . . 16, 20, 21

*Bell v. State*, 724 S.W.2d 780, 781 (Tex.Crim.App.
    1986) . . . . . . . . . . . . . . . 31

*Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). . . . 15

*Cross v. State*, 144 S.W.3d 521, 529 (2004) . . . . . . . . . . . . . . 11

*Davis v. Alaska*, 415 U.S. 308 (1974) . . . . . . . . . . . . . . 16, 17, 18
    21

*Davis v. United States*, 512 U.S. 452, 459 (1994). . . . . . . . . . . . . 12

*Dinkins v. State*, 894 S.W.2d 330, 350-51 (Tex. Crim.
    App. 1995) . . . . . . . . . . . . . . 11

*Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim.
    App. 1996) . . . . . . . . . . . . . . 10, 13

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). . . . . . . . . . . . 11, 12

*Fields v. State*, 1 S.W.3d 687, 688 (Tex.Crim.App.
    1999) . . . . . . . . . . . . . . 24, 25, 27
    28

*Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
    1996 . . . . . . . . . . . . . . 23

*Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim.
    App. 1997) . . . . . . . . . . . . . . 7

*Haley v. State*, 173 S.W.3d 510, 514 (Tex.Crim.App.
    2005) . . . . . . . . . . . . . . 24, 27, 32

*Harrell v. State*, 884 S.W.2d 154, 160 (Tex.Crim.App. 1994) . . . . . . . . . . . . . . . . 24, 28

*Hearne v. State*, 534 S.W.2d 703 (Tex. Crim. App. 1976) . . . . . . . . 10

*Huizar v. State*, 12 S.W.3d 479 at 481 (Tex.Crim.App. 2000) . . . . . . . . . . . . . . . 27

*Hutchison v. State*, 424 S.W.3d 164, 182 (Tex. App. —Texarkana 2014) . . . . . . . . . . . . . . . 15

*Johnson v. State*, 433 S.W.3d 546, 555 (Tex.Crim.App. 2014) . . . . 21

*Love v. State*, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993) . . . . . . 16

*McCarthy v. State*, 65 S.W.3d 47, 51 (Tex. Crim. App. 2001) . . . . . 11, 15

*Mendiola v. State*, 21 S.W.3d 282 (Tex.Crim.App. 2000) . . . . . . . . 32

*Miranda v. Arizona*, 384 U.S. 436, 473-474 (1966). . . . . . . . . . . . 10, 11, 12, 13

*Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App. 1996) . . . . . . . . . . . . . . . 25

*Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . 24, 29, 30

Ochoa *v. State*, 573 S.W.2d 796, 801 (Tex. Crim. App. 1978) . . . . . 14

*Simmons v. State*, 548 S.W.2d 386, 388 (Tex. Crim. App. 1977) . . . . . . . . . . . . . . . 16, 18, 19 21

*Spain v. State*, 585 S.W.2d 705, 710 (Tex.Crim.App. 1979). . . . . . 16, 20, 21

*State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). . . . . . 7

*Taylor v. State*, 995 S.W.2d 279, 283 (Tex. App. - Texarkana
 1999, pet. granted)                           . . . . . . . . . . . . . . . . 23

*Wheeler v. State*, 67 S.W.3d 870 (Tex.Crim.App. 2002).. . . . . . . . 26, 28, 29

**Statutes/Rules**

Texas Code of Criminal Procedure, Article 37.07 §3(a)(1).. . . . . . . 24, 26, 27,
                                                                        28

Texas Code of Criminal Procedure, Article 38.03.  . . . . . . . . . . . . . 31

Texas Rules of Appellate Procedure 11         . . . . . . . . . . . . . . . 32

Texas Rules of Appellate Procedure 44.2       . . . . . . . . . . . . . . . 32

Texas Rules of Evidence 613(b)                . . . . . . . . . . . . . . . 20, 21

Texas Rules of Evidence 402                   . . . . . . . . . . . . . . . 27

Texas Rules of Evidence 403                   . . . . . . . . . . . . . . . 26, 28,  29

## STATEMENT OF THE CASE

This is an appeal of a criminal case wherein the Appellant was indicted for the offense of Aggravated Robbery by a Bowie County Grand Jury on June 26, 2014. C.R., pg. 19. The Appellant was arraigned on July 14, 2014, wherein he pled not guilty. C.R., pg. 13. On August 26, 2014, a jury was selected in the Appellant's case. C.R., pg. 13-4. The jury trial in the Appellant's case began on August 27, 2014, and was concluded on August 28, 2014. C.R., pg. 14. The jury found the Appellant guilty of the charge of Aggravated Robbery on August 28, 2014, and on August 29, 2014, after hearing additional evidence assessed the Appellant's punishment at Twenty-Five years in the Institutional Division of the Texas Department of Criminal Justice. C.R., pg. 15.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellant does believe that oral argument is necessary for the Court to make a ruling in this matter.

# ISSUES PRESENTED

**Appellant's First Issue on Appeal:**

Appellant was denied his Fifth Amendment right to remain silent when the trial court failed to suppress a statement given to police where Appellant invoked his right to remain silent which was not scrupulously honored.

**Appellant's Second Issue on Appeal**

Appellant was denied his Sixth Amendment right to counsel when the trial court failed to suppress a confession where Appellant invoked his right to counsel which was not scrupulously honored.

**Appellant's Third Issue on Appeal**

Appellant was denied his Sixth Amendment right to confront the witnesses against him when the trial court refused to allow Appellant's counsel to present admissible evidence demonstrating bias of a State's witness.

**Appellant's Fourth Issue on Appeal**

The trial court abused its discretion as a matter of law by admitting evidence of extraneous offenses during the punishment phase without an initial finding of reasonable doubt as required by Article 37.07§ 3(a)(1) of the Texas Code of Criminal Procedure.

**Appellant's Fifth Issue on Appeal**

The trial court abused its discretion by admitting extraneous offense evidence during the punishment phase whose probative value was substantially outweighed by its unfair prejudice in so much as it invited the jury to assess Beham's punishment based on an emotional or moral basis.

**STATEMENT OF FACTS**

On the 22nd of December of 2013, an aggravated robbery occurred at the Country Inn Suites, located in Texarkana Texas. Vol. 4, pg. 19. At the time the clerk was alone and observed a female come into the lobby around 10:30 p.m., who asked to use the bathroom. Vol. 4, pg. 87. About ten minutes later two males entered the lobby wearing bandanas on their faces. Vol. 4, pg. 90. One of the males demands a key to the safe and when he is told that the clerk doesn't have it, he goes into a back room and takes the clerk's purse and the two flee. Vol. 4, pg. 91.

Later in the early morning hours of December 23, 2013, a female and a male enter the Ashdown, Arkansas Wal-mart. Vol. 4, pg. 36. The female had in her possession a wallet that appeared to belong to the clerk who was robbed, and attempted to use a gift card. Vol. 4, pg. 37-8. The police were able to develop Arneisha Hall as the suspect who was the female at the Ashdown Wal-mart store. When confronted she confessed to being the female at the motel and in the video at Wal-mart. She further stated that Appellant was the one with the gun at the motel and that he was the one with her at the Ashdown Wal-mart. Vol. 4, pgs. 43-50.

On December 28, 2013, the Appellant was arrested by the Ashdown

Arkansas Police Department for possession of stolen property after being alerted by the Texarkana Police Department to be on the lookout for the Appellant. Vol. 4, pgs. 66-7.

During an interview while being held in Ashdown, Arkansas, after informing the detective that he wanted a lawyer, the Appellant made statements that incriminated him in the robbery. Vol. 4., pgs. 68-71.

## SUMMARY OF ARGUMENT

The trial court repeatedly misinterpreted constitutional law as well as the Texas Rules of evidence and procedure and abused its discretion, leading to Roderick Beham being denied a fair trial. Mr. Beham was convicted of armed robbery because he was denied his rights to remain silent and to counsel during police interrogation and his right to cross-examine witnesses at trial. He was then excessively punished when the trial court allowed inadmissible extraneous offense evidence during punishment.

The trial court acknowledged that Mr. Beham requested a lawyer when given his *Miranda* warnings but failed to suppress the statement resulting when his request was not scrupulously honored by police. Prior to trial, defense counsel properly filed a motion to suppress the statement, arguing that Mr. Beham invoked his right to remain silent and his right to counsel. Inexplicably, during the suppression hearing, the trial court refused to suppress the confession because it found that the confession was voluntary. Per *Edwards v. Arizona*, once a suspect has unambiguously invoked his right to counsel, police must cease the interrogation.

During trial, Mr. Beham was denied his right to cross examine the witnesses against him when the trial court would not allow defense counsel to

5

introduce bias evidence against a key witness for the State. Arneisha Hall testified as an accomplice during the State's case-in-chief. When defense counsel sought to introduce evidence that demonstrated Hall's bias, the state objected. Using the improper rule, the trial court denied Mr. Beham his right to demonstrate this bias. Consequently, Mr. Beham was convicted of aggravated robbery.

During the punishment phase, the trial court allowed inadmissible evidence of extraneous offenses. A state's witness was permitted to testify about alleged extraneous offenses without any personal knowledge of those events. Additionally, the state was allowed to admit a charging instrument and its subsequent dismissal as evidence for two of those alleged offenses.

## ARGUMENT

### First Issue On Appeal

Appellant was denied his Fifth Amendment right to remain silent when the trial court failed to suppress a statement given to police where Appellant invoked his right to remain silent which was not scrupulously honored.

### Second Issue On Appeal

Appellant was denied his Sixth Amendment right to counsel when the trial court failed to suppress a confession where Appellant invoked his right to counsel which was not scrupulously honored.

[Because these points of error involve the same factual context, they are herein consolidated for argument.]

**Standard of Review:**

The standard of review on a suppression issue was set forth in *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). A reviewing court generally uses a bifurcated standard of review in which it gives "almost total deference to a trial court's determination of historical facts" but reviews *de novo* application of law. *Id.* at 89. When the resolution of "mixed questions of law and fact" does not require an evaluation of credibility and demeanor, the proper standard for review is *de novo*. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman*, 955 S.W.2d at 89.

**Facts Showing Error:**

Here, during Beham's custodial interrogation, Detective Giddens read Beham his Miranda warnings and then asked if he wanted to talk. The following exchange took place during that interview:

"Beham:      Yea, I was gonna try to see if I could get a lawyer. My pops told me to get a lawyer – you got a lawyer for me.

Detective Giddens: Ok, so you don't want to talk?

Beham:      No, I really want to talk to the lawyer and see what's going on.

Detective Giddens:      Ok. So you don't even know why I'm here then, huh?

Beham:      Yea, they said that you had to talk to me about something – about something about the girl that I was with at the, um, Wal-Mart.

Detective Giddens:      Mmhmm. Do you want to talk about that?

Beham then told detective Giddens that he took the girl back to Texarkana. At this point, Detective Giddens made the statement, "Well I'm kind of in a bind here. Either we want to discuss it or we don't. Like I said, if it gets too hot on you, you can shut her down, man - is what I'm talking about." Beham hesitated and said, "Well, I'll see what you got to say first." Before he was even finished with that statement, Detective Giddens stated, "Ok, well sign here – and like right here it says you have the right to terminate this thing at any

8

time. When we're talking, you say 'I want my lawyer, I don't want to talk no more. Ok? You've got the right to do that." At this point, Beham signed the warning sheet and made a confession.

Trial counsel for Beham filed a motion to suppress the statement prior to trial. Counsel argued that Beham, while possibly equivocal in his first requests for counsel, was unequivocal when asked whether he wanted to talk to Detective Giddens in saying, "No…I really want to talk to the lawyer and see what's going on" (Vol. 2, pg. 16). As such, Counsel argued that Beham was denied his Fifth Amendment rights to remain silent and have counsel present during questioning (Vol. 2, pgs. 16, 21).

The State opposed the motion to suppress on several grounds. The State's first argument was that Beham was ambiguous in invoking his rights. The trial court listened to the audio recording and made the following observations on the record: 1) Mr. Beham stated "I want a lawyer;" 2) this did not constitute an unambiguous request for an attorney; 3)Detective Giddens continued talking to Mr. Beham; 4) Mr. Beham finally said he would listen to what Detective Giddens had to say; 5) this constituted a voluntary statement. (Vol. 2, pg. 22). As a result, the trial court found "that those statements and the other statements…on the audio…indicate that at all times the conversation

was a voluntary conversation (Vol. 2, pg. 25). Subsequently, the trial court denied Mr. Beham's motion to suppress the statement (Vol. 2, pg. 25). At trial, the State asked Detective Giddens if Beham requested an attorney at any point during his interrogation, Detective Giddens answered "No, ma'am." (Vol 4, pg. 69). Over objection of trial counsel for Beham, the jury was played the video of the interrogation (Vol. 4, pg. 75). During cross-examination, defense counsel asked Detective Giddens again if Mr. Beham had in fact asked for an attorney, and Detective Giddens again replied "No" (Vol. 4, pgs. 78-79).

**Argument:**

Under *Miranda v. Arizona*, 384 U.S. 436, 473-474 (1966), if an in-custody suspect invokes his right to remain silent, questioning must cease immediately. Subsequent questioning, "subtle or otherwise," cannot be viewed as anything other than coercion. *Id.* at 474. As long as the invocation of the right to remain silent is clear and unambiguous, the individual's invocation must be "scrupulously honored." *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). In order to scrupulously honor a suspect's right to remain silent, "A law enforcement officer may not continue to question the suspect until the officer succeeds in persuading the suspect to change his mind and talk." *Id.* at 257. *See also Hearne v. State*, 534 S.W.2d 703 (Tex. Crim. App.

1976).

Likewise, once a defendant requests an attorney, police interrogation must cease immediately. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Miranda*, 384 U.S. 436 at 474-75 (1966); *McCarthy v. State*, 65 S.W.3d 47, 51 (Tex. Crim. App. 2001); *Dinkins v. State*, 894 S.W.2d 330, 350-51 (Tex. Crim. App. 1995)). In *Edwards*, the Supreme Court held that:

> "an accused…having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with police."

451 U.S. at 484-85. The *Edwards* rule is a "'bright line' constitutional mandate frequently repeated by the United States Supreme Court. " *McCarthy*, 65 S.W.3d at 51. In order to satisfy *Edwards*, an individual who has invoked their right to an attorney must affirmatively reinitiate conversations with law enforcement. The invocation of the right to counsel "acts like a protective *Edwards*, bubble" insulating a suspect from further police-initiated interrogation. *Cross v. State*, 144 S.W.3d 521, 529 (2004). As the Supreme Court in *Edwards* noted:

> "additional safeguards are necessary when the accused asks for counsel; …when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right

cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights."

451 U.S. at 484. This case is precisely the type of case the _Edwards_ Court sought to address.

Under both _Miranda_ and _Edwards_, Beham responding "No. I really want to talk to the lawyer and see what's going on" when asked if he wanted to talk clearly demonstrates an unambiguous invocation of his Fifth Amendment rights to remain silent and to counsel. The standard for an unambiguous invocation of the Fifth Amendment by a suspect is whether a reasonable officer would have understood that the suspect _might_ be invoking the right. _Davis v. United States_, 512 U.S. 452, 459 (1994). The statement "No. I really want to talk to the lawyer…" is very nearly as unambiguous a statement as any suspect could ever possibly make. Detective Giddens understood that Beham **might** want a lawyer and **might** not want to answer questions during his more equivocal requests. Hence Detective Giddens asking, "Ok, so you don't want to talk?" If Detective Giddens was not sure at that point, Beham's response of "No. I really want to talk to the lawyer and see what's going on" should have removed any doubt. As such, the interrogation should have ceased immediately.

However, Detective Giddens continued to question Mr. Beham after he invoked his Fifth Amendment rights to silence and counsel when he stated "Ok. So you don't even know why I'm here then, huh?" When Beham told the detective he wanted to talk to an attorney to find out what was going on, this was not an invitation for Detective Giddens to continue the interrogation. However, similar to the strategies the *Miranda* Court discussed regarding law enforcement tactics to keep suspects from invoking their rights, Detective Giddens attempted to keep Beham talking in order to extract his confession. Again, *Miranda* mandates that when an in-custody suspect invokes his right to remain silent, questioning must cease immediately. 384 U.S. 436, 473-474. Detective Giddens' follow-up questioning, "subtle or otherwise," cannot be viewed as anything other than coercion. *Id*. at 474. Disguising the question as clarification did not allow Giddens to subvert the rule. As long as the invocation of the right to remain silent is clear and unambiguous, and Beham's clearly was, the individual's invocation must be "scrupulously honored." *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). Detective Giddens clearly did not scrupulously honor Mr. Beham's rights, making the statement invalid as a matter of law.

The State has the burden to prove that a suspect "specifically and

affirmatively waived this right to counsel." *Ochoa v. State*, 573 S.W.2d 796, 801 (Tex. Crim. App. 1978). During the suppression hearing, the State relied mainly on the more equivocal requests Beham made for an attorney in opposition to the motion to suppress (Vol. 2, pgs. 17-20, 21). The only argument made against Beham's plainly unequivocal invocation was that, in the State's opinion, Beham was saying that he didn't want a lawyer (Vol. 2, pg. 18). Additionally, the State argued that Beham was mumbling. The State argued that under a totality of the circumstances test, there was never a clear invocation because Beham was mumbling and his initial requests for counsel were ambiguous. However, under a totality of the circumstances, logic would dictate that a suspect would not in one sentence request, ambiguously or otherwise, an attorney only to say he didn't want an attorney in the next sentence. The only thing occurring between the two sentences was the detective's question to clarify whether or not Beham wanted to talk, which is clearly not going to change anything. Thus, the State did not meet its burden to prove Beham specifically and affirmatively waived his rights.

The trial court's failure to suppress the illegal statement led Detective Giddens' trial testimony to become alarmingly prophetic. The jury heard Detective Giddens repeatedly deny that Mr. Beham invoked his right to

14

remain silent or that he requested an attorney during his interview despite him clearly doing so repeatedly in the audio-recorded statement from the interrogation. As such, the trial court erred by admitting the recorded statement Beham gave to Detective Giddens.

**Harm Analysis:**

Appellate courts reviewing constitutional error are governed by Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007); *Hutchison v. State*, 424 S.W.3d 164, 182 (Tex. App.—Texarkana 2014). The judgment must be reversed unless the reviewing court finds beyond a reasonable doubt that the error did not contribute to the appellant's conviction. "A defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *McCarthy*, 65 S.W.3d at 56 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)).

## Third Issue On Appeal

Appellant was denied his Sixth Amendment right to confront the witnesses against him when the trial court refused to allow Appellant's counsel to present admissible evidence demonstrating bias of a State's witness.

## Standard of Review:

Appellate courts generally review a trial court's decision to exclude testimony under an abuse of discretion standard. _Love v. State_, 861 S.W.2d 899, 903 (Tex. Crim. App. 1993). It is a "well-established rule" that an accused must be given great latitude when cross-examining any witness about any fact which might show bias against him. _Simmons v. State_, 548 S.W.2d 386, 388 (Tex. Crim. App. 1977). It is an abuse of discretion and constitutional error when an accused is denied the right to cross-examine a state's witness in the presence of the jury regarding bias or prejudice. _Davis v. Alaska_, 415 U.S. 308 (1974); _Spain v. State_, 585 S.W.2d 705, 710 (Tex. Crim. App. 1979); _Simmons v. State_, 548 S.W.2d 386, 388 (Tex. Crim. App. 1977); _see also_ _Alford v. United States_, 282 U.S. 687 (1931).

## Facts Showing Error:

Arneisha Hall, the State's key witness, testified against Beham as an accomplice during trial. Hall testified that Beham was the ringleader when

she, Beham, and another man, Jacobi Cox, robbed the Texarkana Country Inn & Suites. Hall identified Beham as the gunman on the hotel's surveillance footage taken at the time. Hall claimed that her job was to find out if the clerk inside was alone and then serve as the lookout while Beham and Cox went inside to commit the armed robbery.

When trial counsel for Beham sought to inquire about Hall's probation for prior weapons charges during cross-examination, the prosecutor objected, stating:

> Your Honor, that was not a felony or a crime of moral turpitude. It's outside the rule and there's no reason he should be getting into it to impeach this witness. She has not ever indicated that she doesn't have a criminal history or that she was a good person who wouldn't commit a crime. She appears here in jail clothes and shackles and admits to being incarcerated for a robbery. We'd ask that the jury disregard the last question (IV R.R. at 53-54).

Despite trial counsel for Beham explaining why the testimony should be allowed, the trial court sustained the State's objection and instructed the jury to disregard (IV R.R. at 54).

**Argument:**

In _Davis_, the defendant sought to elicit information from a state's witness during cross-examination about his being on probation at the time he implicated the defendant, but the trial court would not allow it. 415 U.S. at

17

313. The Supreme Court reversed, holding that an accused must be allowed to ask questions about a State's chief witness being on probation. *Davis*, 415 U.S. at 315-21. The Court reasoned that not only do such questions have the potential to show bias, but their denial has the potential to infer to the jury that an inquiry into the witness's bias is baseless. It is the jury who is the sole trier of fact and credibility, and they must be allowed to determine if a witness is reliable.

In *Simmons v. State*, 548 S.W.2d 386, a defendant was denied his Sixth Amendment right to confrontation when the trial court refused to allow questions concerning the prior arrests of the State's chief witness. In revisiting previous confrontation cases, the Texas Court of Criminal Appeals reaffirmed the "well-established rule" that an accused must be given the opportunity to demonstrate any fact that would show an incentive for a witness against him to fabricate his testimony. *Id.* at 388. Ultimately, the Court held that even questions relating to dismissed charges must be allowed during cross-examination since they have the potential to demonstrate the bias of a witness against the accused. In its opinion ordering reversal and remand, the Court held that "The denial of the right of effective cross-examination in this case is 'constitutional error of the first magnitude and no amount of showing of want

of prejudice could cure it.'" <u>Simmons</u>, at 388 (quoting *Davis*, 415 U.S. at 318).

Similarly, Beham was denied his Sixth Amendment right to confrontation when the trial court sustained an objection to questions concerning Arneisha Hall's probation for prior weapons charges. None of the State's arguments against the questioning were relevant to this determination. The obvious implication from the State's argument is that Rule 609, impeachment by evidence of a criminal conviction, should apply. This was not Beham's purpose for the questions, so clearly this is not the applicable rule.

The purpose of the questioning was not, as the State and trial court seemed to think, to discredit Hall by demonstrating that she had committed a crime. Testimony on direct had already established that Hall previously pled guilty to the robbery. The purpose of the questioning of Hall about her probation was to demonstrate two different points of bias.

First, part of Hall's plea to robbery as a lesser included offense was that there was no deadly weapon finding. A substantial part of Hall's testimony focused on the narrative that she was just the "lookout" during the robbery and nothing more. Hall also claimed that she did not know where the gun came from. In fact, the State went to great lengths to paint Hall as a

cooperating witness who didn't have a gun and wanted to take responsibility. This testimony could have been part of the quid pro quo for Hall's plea. Hall was still susceptible to pressure from the State. Inquiry into her probation on the weapons charges could have brought to light new evidence with regard to who actually brought the gun. Even if cross-examination into Hall's probation had only shown bias by rebutting facts in the State's case in chief, its denial still constituted constitutional error. _Spain_, 585 S.W.2d at 710 (quoting _Alford_, 282 U.S. 692).

Bias could have further been demonstrated if Hall received any special consideration on a probation revocation arising from a guilty plea to robbery. Undoubtedly Hall violated her probation by being involved in the robbery. Any part of Hall's plea agreement that affected that revocation would demonstrate further bias which the jury had the right, as the sole triers of fact, to hear. Not only does Rule 613(b) and case law allow for this inquiry, the State opened the door on direct examination by asking Hall about her plea bargain. Trial counsel for Beham should have been given the opportunity to explore whether Hall's probation proceedings were a part of that agreement.

Whether the trial court relied on Rule 608, 609, or 613(b) is inapposite. The court should have allowed Beham to question Hall about any prejudice

resulting from her probation in accordance with the correct rule - 613(b). Tex. R. Evid. 613(b) (Vernon's 2015). Case law clearly manifests that cross-examination questions about a State's witness being on probation are proper to demonstrate that witness's potential for bias. *See Davis*, 415 U.S. at 318; *Alford v. United States*, 282 U.S. 687; *Spain v. State*, 585 S.W.2d at 710; *Simmons v. State*, 548 S.W.2d at 388.

Trial counsel's subsequent questions demonstrating bias are not dispositive to ameliorating the harm suffered by Beham as a result of the trial court's sustained objection.

**Harm Analysis:**

"Trial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Johnson v. State, 433 S.W.3d 546, 555 (Tex.Crim.App. 2014).

"This latitude is exceeded only when the trial court exercises its discretion to so drastically curtail the defendant's cross-examination as to leave him "unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality

21

expected of a witness at trial." This kind of trial-court error is most conspicuous, of course, when the trial court entirely forecloses the defense from exposing—"prohibit[s] all inquiry into"—a "prototypical form of bias." But it may also be subtler, such as when the only record-making permitted the defense is so circumscribed that "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." Id at 555.

The witness being cross-examined, had already admitted that she was being granted a considerable amount of reward for her testimony, including the fact that her charge had been reduced from aggravated robbery to robbery. (Vol. 4, pg. 55). Further, she admitted that she had lied about just about everything, including her involvement in the crime when first interviewed by the police. (Vol. 4, pgs. 51-3). Appellant should have been allowed to further inquire about her bias in testifying for the State based upon the fact that she was also in jeopardy in her probation case, so that the jury could completely judge her credibility and her motivation for testifying to the matters that incriminated the Appellant.

## Fourth Issue On Appeal

The trial court abused its discretion as a matter of law by admitting evidence of extraneous offenses during the punishment phase without an initial finding of reasonable doubt as required by Article 37.07§ 3(a)(1) of the Texas Code of Criminal Procedure.

## Fifth Issue On Appeal

The trial court abused its discretion by admitting extraneous offense evidence during the punishment phase whose probative value was substantially outweighed by its unfair prejudice in so much as it invited the jury to assess Beham's punishment based on an emotional or moral basis.

[Because these points of error involve the same factual context, they are herein consolidated for argument.]

## Standard of Review:

Appellate courts generally review a trial court's decision to admit or exclude testimony under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App.1996); *Taylor v. State*, 995 S.W.2d 279, 283 (Tex. App.-Texarkana 1999, pet. granted). In determining abuse of discretion, appellate courts determine whether the trial court acted arbitrarily or capriciously and will uphold a decision unless it falls outside of the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391-92

23

(Tex. Crim. App. 1990).

Article 37.07§ 3(a)(1) of the Texas Code of Criminal Procedure, which governs extraneous offense evidence during the punishment phase, states that:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Art. 37.07 § 3 (Vernon's 2015).

Trial courts should refer to the language of Article 37.07 when they are making determinations regarding the admissibility of evidence under its authority. _Haley v. State_, 173 S.W.3d 510, 514 (Tex. Crim. App. 2005). Before extraneous offense evidence can be considered in determining punishment, the fact-finder must be satisfied beyond a reasonable doubt that the bad acts are attributable to the defendant. _Haley_, at 514; _Fields v. State_, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999); _Harrell v. State_, 884 S.W.2d 154, 160 (Tex. Crim.

24

App. 1994). The defendant's involvement in the act itself must be proven beyond a reasonable doubt to satisfy the statute. At the time extraneous offense evidence is offered, the trial court must make an initial determination on whether the jury could find that the defendant committed the offense beyond a reasonable doubt. *Fields*, 1 S.W. 3d at 688; see *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996).

**Facts Showing Error:**

Here, during the punishment phase testimony of Detective Giddens, the State sought to introduce evidence of extraneous offenses to demonstrate so-called "contact with law enforcement" (Vol. 5, pgs. 31). Trial counsel for Beham objected when the State asked Detective Giddens if he found an arrest for unlawful possession of a weapon in Shelby County, Tennessee, when he was familiarizing himself with Beham's criminal record (Vol. 5, pgs. 30-31). The trial court allowed trial counsel to voir dire Detective Giddens outside the presence of the jury (Vol. 5, pgs. 31-32). During the voir dire examination, Detective Giddens admitted to having no personal knowledge of the alleged events or their circumstances (Vol. 5, pgs. 32-33). Subsequently, trial counsel for Beham renewed his objection based on the detective's lack of personal knowledge, arguing the evidence would prejudice the jury without adding any

probative value (Vol. 5, pgs. 33-34). In rebuttal, the state acknowledged that the evidence wasn't being introduced to prove Beham had committed the crimes (Vol. 5, pgs. 34-35). Instead, the State wanted to demonstrate that Beham's having had "contact with law enforcement" made him more deserving of a harsher punishment (Vol. 5, pgs. 34-35).

Relying upon _Wheeler v. State_, 67 S.W.3d 879 (Tex. Crim. App. 2002), the trial court focused its analysis primarily on the four factor balancing test of Rule 403 for determining the admissibility of extraneous offense testimony. Finding that the prejudicial effect of the extraneous offense evidence did not substantially outweigh its probative value, the trial court admitted all of the State's evidence of unadjudicated extraneous offenses (Vol. 5, pgs. 35). In doing so, the trial court disregarded Article 37.07 entirely, stating that: "As Counsel has indicated, under Article 37.07, extraneous offenses are admissible" (Vol. 5, pg. 36). According to the record, the trial court seemingly declined to analyze both Article 37.07 and prong two of the Rule 403 balancing test (Vol. 5, pg. 36). Instead, the Court briefly analyzed prong three - finding that the evidence would not take much time to develop and part four – "I don't find that the state has a tremendous amount of evidence so that the need for it would not be great" of the balancing test (Vol. 5, pg. 36).

**Fourth Issue on Appeal:**

The trial court erred by failing to make any meaningful analysis of the extraneous offense evidence under Article 37.07 §3 in determining the admissibility as prescribed by statute. Tex. Code Crim. Proc. Art. 37.07 §3 (Vernon's 2015); See _Haley_, 173, S.W.3d at 514; _Huizar_, 12 S.W.3d 479 at 481 (Tex.Crim.App.2000); _Fields_, 1 S.W. 3d at 688. Rule 402 of the Texas Rules of Evidence states:

Relevant evidence is admissible unless any of the following provides otherwise:

　• the United States or Texas Constitution;

　• a statute;

　• these rules; or

　• other rules prescribed under statutory authority.

　Irrelevant evidence is not admissible.

Tex. R. Evid. 402 (Vernon's 2015). 0.

As case law clearly demonstrates (and as trial counsel for Beham correctly pointed out (Vol. 5, pgs. 33-34)), Article 37.07 § 3(a)(1) requires an initial finding by the trial court of proof beyond a reasonable doubt that the defendant has committed the bad act alleged as a prerequisite to admissibility during the punishment phase. See _Haley_, 173 S.W.3d at 514; _Huizar_, 12

S.W.3d at 483; _Fields_, 1 S.W.3d at 688; _Harrell_, 884 S.W.2d at 160. This initial finding must be made at the time the evidence is offered.

Interestingly, the State acknowledged that it could not, and would not, meet any burden of proof that Beham actually committed the alleged acts in the extraneous offense evidence, let alone do so beyond a reasonable doubt (Vol. 5, pgs. 34-35). Instead, the State founded its argument wholly on an incorrect interpretation of Article 37.07§ 3(a)(1), reading that it allowed for unfettered admittance of evidence during punishment (Vol. 5, pgs. 34-35). As such, all evidence regarding the arrest for the alleged unlawful possession of a weapon in Shelby County, Tennessee, and all evidence of the arrest, charges, and dismissal of both the aggravated burglary of a habitation and theft in Shelby County, Tennessee were inadmissible as a matter of law. The trial court clearly abused its discretion by admitting the evidence without regard to any guiding principles.

**Fifth Issue on Appeal**

The trial court erred in ruling that the probative value of the extraneous offense evidence was not outweighed by unfair prejudice. The Rule 403 balancing test used in _Wheeler_, provides that:

> The trial court should consider several factors in determining whether the prejudicial effect of evidence substantially outweighs

its probative value under Rule 403. These factors include:

1.    how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable;

2.    the extraneous offense's potential to impress the jury in some irrational but indelible way;

3.    the trial time that the proponent will require to develop evidence of the extraneous misconduct; and

4.    the proponent's need for the extraneous transaction evidence.

*Wheeler*, 67 S.W.3d at 888.

A trial court errs if its ruling is not in the "zone of reasonable disagreement" when admitting relevant evidence whose probative value is substantially outweighed by its danger of unfair prejudice. When one or more "relevant criteria reasonably conducing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice is determined to have substantially outweighed probative value" based on a review of the record, the admittance will constitute an abuse of discretion. *Montgomery*, 810 S.W.2d at 393. Relevant criteria includes, in pertinent part, that the alleged bad act "was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious." Id. at 392-93.

29

Here, factor two weighs heavily against the court's ruling that the extraneous offense was admissible under Rule 403. Id. at 393. Given the criteria set out in _Montgomery_, the trial court should have found that the probative value of the evidence was substantially outweighed by its unfair prejudice. The alleged bad acts of unlawful weapons possession, aggravated burglary, and theft are all closely connected in nature with aggravated robbery. Even assuming the trial court conducted some analysis under the second prong, where none is reflected in the record, the State's affirmation on the record of offering the evidence for the sole purpose of showing conformity of character coined as "contact with law enforcement" (Vol. 5, pgs. 34-35). The only logical inference that can be drawn from evidence so purposefully inflammatory is an invitation for the jury to assess the defendant's punishment on an emotional or moral basis. Id. at 395. The State's comment in closing arguments claiming "here's where he committed aggravated robbery – or aggravated burglary and theft of property in Shelby County, Tennessee" fortifies the State's intent for this evidence to evoke a visceral response from the jury (Vol. 6, pg. 5). This is precisely the type of prejudice the Rule 403 balancing test is designed to guard against – evidence that invites the jury to substitute their oath to follow the law with their own emotions. Thus, the

absence of any inquiry into relevant criteria under the second prong of Rule 403's balancing test's reveals an abuse of discretion by the trial court by admitting the objected-to extraneous offense evidence during punishment.

An arrest or indictment or other instigation of criminal charges is no evidence of guilt. Texas Code of Criminal Procedure, Article 38.03 (Vernon's 2015)*; Bell v. State*, 724 S.W.2d 780, 781 (Tex.Crim.App.1986).  It would also be true that a dismissal of charges is no evidence of innocence. Because neither the charging nor the dismissal of charges has no tendency to make appellant's commission of the offered extraneous offenses more or less probable, there can seriously be no claim that the evidence was relevant.

Additionally, the State provided the Appellant with its notice of intent to offer extraneous evidence at the guilt-innocence and at the punishment phase of the trial approximately 20 days for the trial began. (C.R., pg. 65). In that notice the State notified the Appellant that it intended to show that the Appellant "committed" Assault, Aggravated Burglary and a Weapons charge in Shelby county Tennessee. (C.R., pg. 66). It is clear, that at trial the State was well aware of the fact that they could not prove the Appellant committed any of these charges. The admission of these "contacts" however clearly left the jury with the impression that the Appellant had a lengthy criminal record

when none existed. <u>See</u> *Mendiola v. State*, 21 S.W.3d 282 (Tex. Crim. App. 2000).

**Harm Analysis:**

Upon finding an abuse of discretion by a trial court, appellate courts must determine whether the error had a substantial effect on the jury's verdict. <u>Haley</u>, 173 S.W.3d at 518. Rule 44.2 of the Texas Rules of Appellate Procedure states:

> **44.2. Reversible Error in Criminal Cases**
>
> (a)    Constitutional Error.
>
> If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
>
> (b)    Other Errors.
>
> Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

Tex. R. App. P. 11 (Vernon's 2015).

In determining the probability that the error had an injurious effect on the jury's assessment of punishment, a reviewing court should consider everything in the record, such as testimony or physical evidence admitted for

32

consideration by the jury, the character of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. Jury instructions, theories by either the State or defense, closing arguments, voir dire and whether the State emphasized the error should also be considered by appellate courts. *Haley*, at 518-19.

Here, the extraneous offense evidence at issue unquestionably had a substantial effect on the jury in assessing Beham's punishment. The jury sentenced Beham to 25 years. The record clearly shows the evidence of unadjudicated extraneous offenses to be the most reflective of the jury's assessment of punishment. Removal of the erroneously admitted extraneous offenses, on the other hand, severely cripples the State's punishment case. Without the unadjudicated extraneous offense evidence, the State is stuck only being able to demonstrate Beham's criminal record prior to this case through a single conviction for a Class B Misdemeanor (theft - $5-$500) (Vol. 7, pgs. 18-19). Even then, the State could only offer an order of deferred adjudication (State Ex. 14, Vol. 7, pg. 18) and a judgment of guilt (State Ex. 15, Vol. 7, pg. 19). The rest of the State's evidence consisted of victim impact testimony (Vol. pgs. 102-06), testimony about a few incidents within the correctional facility

where Beham was held while awaiting trial (Vol. 5, pgs. 64-65, 68-69, 74-76, 78-79, 82-85), and speculative allegations of gang ties based on Facebook photos (State Ex. 8-12, Vol. 7, pgs. 12-16) (Vol. 5, pgs. 41-43, 92-96). Tellingly, the State's gang expert testified on cross-examination that gang members tend to have an extensive criminal history (Vol. 5, pg. 98), further illuminating both the weakness of the State's case outside of the erroneously-admitted extraneous offense evidence as well as the substantial harm Beham suffered as a result from the error to allow it.

## CONCLUSION

For the reasons stated herein, Appellant, Roderick Beham prays that this honorable Court find error as outlined above and reverse his conviction for the offense of Aggravated Robbery and order that he be granted a new and fair trial in accordance with the law and statutes of the State of Texas.

Respectfully submitted,

/s/Alwin A. Smith
Alwin A. Smith
TBN: 18532200
al@alwinsmith.com
602 Pine Street
Texarkana, Texas 75501
903/792-1608
903/792-0899 Fax

### Certificate of Compliance

Pursuant to the Tex. R. App. P. 9.4(i)(3), I hereby certify that this brief contains 6,494 words (excluding the caption, table of contents, table of authorities, signature of proof of service, certification and certificate of compliance). This is a computer-generated document created in Wordperfect, using 14 point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

/s/Alwin A. Smith

## Certificate of Service

This is to certify that a true and correct copy of Appellant's Brief has been forwarded to the Appellant, Roderick Beham, Lewis Unit, 777 FM 3497,m Woodville, Texas 75990 and Jerry Rochelle, Attorney for the State, 601 Main Street, Texarkana, Texas 75501, on this the 15th day of May 2015, by placing the same in the U.S. Mail or private courier service.


/s/Alwin A. Smith